No. 25-10549

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

PHILIPS NORTH AMERICA, L.L.C.,
*Plaintiff - Appellee*,

v.

IMAGE TECHNOLOGY CONSULTING, L.L.C.; MARSHALL R.
SHANNON; IMAGE TECHNOLOGY CONSULTING II, L.L.C.; AXIOM
IMAGING SOLUTIONS, INCORPORATED,
*Defendants - Appellants*.

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

---

## BRIEF OF APPELLANTS

---

AUSTIN CHAMPION
Champion LLP
2200 Ross Avenue
Suite 4500W
Dallas, Texas 75201
T: (214) 225-8880
F: (214) 225-8881
austin.champion@championllp.com

Counsel for Appellants

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

<u>Appellants</u>

1. Image Technology Consulting, L.L.C.

2. Marshall R. Shannon

3. Image Technology Consulting II, L.L.C.

4. Axiom Imaging Solutions, Inc.

<u>Counsel for Appellants</u>

5. Austin Champion of Champion LLP

6. Thaís Dourado of Champion LLP

7. Benton Williams II of Benton Williams PLLC

<u>Appellee</u>

8. Philips North America, LLC

<u>Counsel for Appellee</u>

9. Christopher R. Brennan of Reed Smith LLP

ii

10.     Clark A. Donat of Reed Smith LLP

11.     James T. Hultquist of Reed Smith LLP

12.     Gerard M. Donovan of Reed Smith LLP

13.     Carla M. Wirtschafter of Reed Smith LLP

## Corporate Disclosures of Appellee

14.     Philips Holding USA, Inc., Member/Manager of Appellee

15.     Koninklijke Philips N.V., Parent of Appellee

*/s/ Austin Champion*
Austin Champion
CHAMPION LLP
2200 Ross Avenue
Suite 4500W
Dallas, Texas 75201
214-225-8880 | Direct
214-225-8881 | Fax

**Counsel for Appellants**

iii

## STATEMENT REGARDING ORAL ARGUMENT

Appellants Image Technology Consulting, L.L.C., Marshall R. Shannon, Image Technology Consulting II, L.L.C., and Axiom Imaging Solutions, Inc. (hereinafter, collectively, "Appellants") submit that oral argument would assist the Court with the record below and on the issues presented herein.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................ii

STATEMENT REGARDING ORAL ARGUMENT ................................iv

TABLE OF CONTENTS ........................................................... v

TABLE OF AUTHORITIES ...................................................ix

STATEMENT OF JURISDICTION .......................................14

STATEMENT OF THE ISSUES PRESENTED ....................................15

STATEMENT OF THE CASE ............................................................16

    I.    Philips Revokes ISO Access to its Software Service Tools. ....................................................................17

    II.   Appellants Bypass Philips' Security Measures to Continue Servicing its Customers' MRI Machines. ............. 18

    III.  Philips Sues Appellants and Appellants Assert Counterclaims. .................................................. 20

    IV.  The District Court Dismisses Original Defendants' Counterclaims as Moot and Abandoned. ............................22

    V.   The District Court Grants Death-Penalty Sanctions Against Appellants, Awarding Philips $6.05M in Damages. ........................................................23

SUMMARY OF THE ARGUMENT ....................................................27

ARGUMENT .............................................................................31

    I.    The District Court erred by Applying the Wrong Evidentiary Standard for the "Intent to Deprive" element under Rule 37(e)(2). ..............................................31

A.      The Standard of Review is *De Novo*.............................31

B.      Rule 37(e)(2) Sanctions Run Parallel to a Bad Faith Analysis under a Court's Inherent Sanctioning Powers.......................................32

C.      Existing Fifth Circuit Precedent Supports the Application of a Clear and Convincing Evidence Standard to Determining a Litigant's "Intent to Deprive" under Rule 37(e)(2)..........................................33

II.   The Record Evidence does not Support the District Court's Finding that the Lost ESI Could not be Replaced Through Additional Discovery..............................37

A.      The Standard of Review is Clear Error. ......................37

B.      Spoliation Sanctions under Rule 37(e) are Disfavored when Adequate Discovery and Recovery Efforts have not been Performed to Determine the Purportedly Lost ESI Cannot be Restored or Replaced. ................................38

C.      The District Court Clearly Erred When It Found that the Allegedly Spoliated ESI Could Not be Restored or Replaced. ................................39

        i.      Philips' Only Log File Evidence was Sourced from Active Remote Monitoring Software, and Philips Conducted No Substantive Third-Party Discovery to Obtain Actual Evidence of Deletions..............41

        ii.     Philips Failed to Demonstrate that the Allegedly Lost ESI Could not be Restored or Replaced......43

        iii.    The District Court's Determination that Mr. Shannon was not Credible is not Proof of the Opposite Assertion..............................44

III.  The Record Evidence does not Support a Finding that Philips was Substantially Prejudiced by ESI Spoliation........46

A.      The Standard of Review is Clear Error. ......................46

B.  The Heightened Standards for Terminating Sanctions under Rule 37(e)(2) Require a Finding that the ESI Deletion Substantially Prejudiced the Opposing Party. ...........................................................47

C.  Any Prejudice to Philips' Case-in-Chief was Caused by its own Discovery Inaction, and was not Caused by Appellants' Conduct....................................47

    i.  Philips Presented no Forensic Evidence to Support the Existence or Extent of any Spoliation and Philips' Only Evidence of Spoliation was Predicated on Appellants' Own Statements.......48

    ii.  Philips Knowingly Failed to Perform Necessary Discovery to Prove its Case or Otherwise Carry its Burden of Proof to Show Sanctions were Warranted, and any Prejudice to Philips is not Attributable to Appellants. ...................................50

    iii.  The District Court Clearly Erred by Finding that Appellants' Conduct Substantially Prejudiced Philips, Departing from Established Precedent on Philips' Burden of Proof.......................................53

IV.  The District Court Erred by Entering Default Judgment Because a Lesser Sanction was Proven to be Sufficient to Redress the Loss and Allow for a Trial on the Merits......56

A.  The Standard of Review is Clearly Erroneous. ...........56

B.  More Severe Sanctions Should Only be Used when Lesser Sanctions Would Not Adequately Redress the Loss. ...................................................................56

C.  The District Court's Consideration of Lesser Sanctions, and Decision Not to Utilize them, was Based on an Erroneous Factual Conclusion................57

D.  The Ability for Philips to Present Evidence of Appellants' Service Tool Usage Demonstrates that a Lesser Sanction Would Have Redressed Philips' Harm........................................................................60

V.  The District Court's $6.05 Million Damages Award Was Improperly Determined and Excessive. ................................ 63

    A.  The District Court Improperly Relied on Philips' Unreasonable and Improper Royalties Model. ............ 63

        i.  Philips' Royalties Model Improperly Applied the Entire Market Value Rule. ................................... 64

        ii.  Philips' Royalties Model Lacks Proper Value Apportionment. ................................................. 67

    B.  The District Court Ignored Evidence of Appellants' Use of Relevant Trade Secrets. .................................... 69

    C.  The District Court Erred in Including Sanctions Related to Pending Claims in the Trade Secret Misappropriation Damages Award. ........................... 74

VI.  Dismissal of Original Defendants' Counterclaims is Unsupported by the Record. .................................................. 75

    A.  The Standard of Review is Clearly Erroneous. ........... 75

    B.  A Counterclaim is Not Moot if Intent to Pursue is Manifested. ................................................................. 76

    C.  Motion Activity Evidences that Original Defendants Intended to Pursue their Counterclaims. .......................................................... 76

    D.  Discovery Activity Evidences that Original Defendants Intended to Pursue their Counterclaims. .......................................................... 79

CONCLUSION ...........................................................................81

CERTIFICATE OF SERVICE................................................................84

CERTIFICATE OF COMPLIANCE ...................................................87

# TABLE OF AUTHORITIES

## CASES

*BalanceCXI, Inc. v. Int'l Consulting*, No. 1:19-CV-0767-RP, 2020 WL 6886258 (W.D. Tex. Nov. 24, 2020) ..........................................45

*Best Payphones, Inc. v. City of New York*, No. 1-CV-3924 (JG) (VMS), 2016 WL 792396 (E.D.N.Y. Feb. 26, 2016) ..................40, 43

*BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*, No. 3:22-CV-1981-L-BN, 2024 WL 1607065 (N.D. Tex. Apr. 12, 2024) .......20

*Brinkmann v. Abner*, 813 F.2d 744 (5th Cir. 1994) ...............................23

*Brown v. SSA Atlantic, LLC*, No. CV419-303, 2021 WL 1015891(S.D. Ga. Mar. 16, 2021) ..................................................30

*Calsep A/S v. Dabral*, 84 F.4th 304 (5th Cir. 2023) ..........................20, 58

*Calsep A/S v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2022 WL 2813069 (5th Cir. 2023) ..................................58

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S.Ct. 2123 (1991) .......62

*CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60 (5th Cir. 1992)...............................................................................................57

*Common Cause Ga. v. Georgia*, 17 F.4th 102 (11th Cir. 2021) ..............20

*Cornejo v. EMJB, Inc.*, No. SA-19-CV-01265-ESC, 2021 WL 4526703 (W.D. Tex. Oct 4, 2021) ..........................................21, 24

*Crowe v. Smith*, 261 F.3d 558 (5th Cir. 2001).......................................22

*Davis v. White*, 794 F.3d 1008 (8th Cir. 2015).......................................63

*Dontos v. Vendomation NZ Ltd.*, No. 3:11-CV-553-K, 2015 WL 5311094 (N.D. Tex. Aug. 24, 2015) ................................................57

*Eagan v. Walgreen Company*, No. 21-20352, 2022 WL 683636 ((5th Cir. Mar. 8, 2022) ............................................................................22

*Envy Hawaii LLC v. Volvo Car USA LLC*, No. 17-00040 HG-RT,
2019 WL 1292288 ............................................................... passim

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) .......53

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) ......55

*Flores v. AT&T Corp.*, No. EP-17-CV-00318-DB, 2018 WL 6588586
(W.D. Tex. Nov. 8, 2018) ............................................................31

*Garretson v. Clark*, 111 U.S. 120 (1884) ...............................................52

*Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894 (5th Cir. 1997)
........................................................................................24

*Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678 (D.
Md. 2011) .................................................................................64

*Halff Assocs., Inc. v. Warner Pac. Props. L.L.C.*, No. 3-08-cv-574-B,
2008 WL 3874673 (N.D. Tex. Aug. 13, 2008) ................................58

*Hoffer v. Tellone*, 128 F.4th 433 (2d Cir. 2025) ................................23, 24

*Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH.*, 408
F.3d 1374 (Fed. Cir. 2005) ......................................................53, 54

*In re Moore*, 739 F.3d 724 (5th Cir. 2014) ...........................................22

*In re Sealed Appellant*, 194 F.3d 666 (5th Cir. 1999) .......................21, 24

*Int'l Energy Ventures Mgmt., L.L.C. v. United Grp. Ltd.*, 818 F.3d
193 (5th Cir. 2016)....................................................................21

*Klezmer ex rel. Desyatnik v. Buynak*, 227 F.R.D. 43 (E.D.N.Y 2005)
....................................................................................40, 43

*KPS & Assocs., Inc. v. Designs By FMC, Inc.* (1st Cir. 2003) ................61

*Law Funder, L.L.C. v. Munoz*, 924 F.3d 753 ............................... passim

*LivePerson, Inc. v. [24]7.AI, Inc.*, No. 17-CV-01268-JST, 2018 WL
6257460 (N.D. Cal. Nov. 30, 2018) .............................................57

*McKinney ex rel. N.L.R.B. v. Creative Vision Res., L.L.C.*, 783 F.3d
293 (5th Cir. 2015)...............................................................63

*Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546 (5th
Cir. 2005) ...........................................................................51

*Nishikawa v. Dulles*, 356 U.S. 129 (1958) ..............................................32

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F.Supp.2d
1064 (N.D. Cal. 2005) ...........................................................56

*Parallel Networks LLC v. Autoflex Leasing, Inc.*, No. 5:07-CV-125-
DF, 2008 WL 8781701 (E.D. Tex. Aug. 19, 2008) ....................53, 54

*Powell v. Penhollow*, 260 F.App'x 683 (5th Cir. 2007) ...........................51

*Prince v. Poulos*, 876 F.2d 30 (5th Cir. 1989)..............................35, 41, 42

*ReSea Project APS v. Restoring Integrity to the Oceans, Inc.*, No.
SA-21-CV-1132-JKP, 2024 WL 4279524 (W.D. Tex. Sep. 24,
2024)....................................................................................57

*Rimkus Consulting Group, Inc. v. Camarata*, 688 F.Supp.2d 598. passim

*Robert v. Tesson*, 507 F.3d 981 (6th Cir. 2007)......................................20

*Ryan Companies US, Inc. v. Solarjuice Am. Inc.*, No. 3:23-CV-00331
(S.D. Tex. Feb. 7, 2025) ........................................................63

*Schutt a/n/f for A.S. v. Garland Indep. Sch. Dist.*, No. 3:17-CV-1708-
B, 2019 WL 3006768 (N.D. Tex. July 9, 2019) ........................64, 67

*Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469...................24, 25

*Skanksa USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th
1290.................................................................20, 26, 34, 44

*Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96......................26

*Thomas as Tr. of Performance Prods., Inc. v. Hughes*, No. 5:16-CV-
951-DAE, 2019 WL 1560939.................................................52

*Timms v. LZM, L.L.C.*, 657 F.App'x 228 ............................................62

*Travelhost, Inc. v. Blandford*, 68 F.3d 958 ..............................................32

*Trinseo, S.A. v. Harper*, No. 4:20-CV-0478, 2023 WL 8358889........55, 56

*U.S. v. Real Prop. Located at 1407 N. Collins St., Arlington, Texas*, 901 F.3d 268 (5th Cir. 2018) ..........................................19

*Union Carbide Corp. v. Graver Tank and Manufacturing Co.*, 282 F.2d 653 ..........................................................58

*Union Carbide Corp. v. Graver Tank and Manufacturing Co.*, 282 F.2d 653, 674-75 (7th Cir. 1960), cert. denied, 365 U.S. 812 (1961) ..........................................................58

*United States v. Tocco*, 200 F.3d 401(6th Cir. 2000) ............................20

*Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 51858,    60, 61

*University Computing Co. v. Lykes-Youngstown, Corp.*, 504 F.2d 518..........................................................52

*Vikas WSP, Limited v. Economy Mud Products Company*, 23 F.4th 422..........................................................22, 25

*VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d ......................................53

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 ...................48, 49, 50

## STATUTES

17 U.S.C. §§ 1201 and 1202 ....................................................4

18 U.S.C. § 1030..........................................................4

18 U.S.C. § 1836..........................................................4

Tex. Civ. Prac. & Rem. Code § 134A.002, 134A.003(a), *et seq.*................4

## RULES

Fed. R. Civ. P. 1 ..........................................................84

Fed. R. Civ. P. 15(a)(1) ..........................................................................81

Fed. R. Civ. P. 37(e) ....................................................................... passim

Fed. R. Civ. P. 37(e)(1)...........................................................................35

Fed. R. Civ. P. Rule 37(e)(2) .......................................................... passim

Rule 37(b)(2)(C)......................................................................................25

## STATEMENT OF JURISDICTION

On March 21, 2025, the District Court entered its Final Judgment disposing of all remaining claims and controversies in the case. The District Court's subject matter jurisdiction in this matter arose under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1369 (supplemental jurisdiction). Appellants timely filed a Notice of Appeal on April 17, 2025, pursuant to Fed. R. App. P. 4(a)(1)(A). Under 28 U.S.C. § 1291, this Court has jurisdiction over this appeal from the final decisions of the District Court.

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether the trial court erred in applying a preponderance of the evidence standard to assess death-penalty sanctions under Fed. R. Civ. P. 37(e)(2).

2.  Whether the trial court erred in assessing death-penalty sanctions when it failed to make a finding that electronically stored information could not be restored or replaced through additional discovery.

3.  Whether the trial court erred in finding sufficient evidence that Appellee was substantially prejudiced by spoliation, as required for heightened sanctions under Fed. R. Civ. P. 37(e)(2).

4.  Whether the trial court erred by failing to utilize lesser sanctions as an alternative to default judgment.

5.  Whether the trial court erred by awarding unsupported and improperly calculated trade secrets and sanctions damages.

6.  Whether the trial court erred in determining there was no intent to pursue counterclaims and dismissing Image Consulting Technology, L.L.C. and Marshall R. Shannon's Amended Counterclaims for mootness and abandonment.

## STATEMENT OF THE CASE

This dispute involves claims by Appellee Philips North America, L.L.C. (hereinafter, "Appellee" or "Philips") against Appellants Image Technology Consulting, L.L.C. (hereinafter, "Image I"), Marshall R. Shannon (hereinafter, "Mr. Shannon"), Image Technology Consulting II, L.L.C. (hereinafter, "Image II"), and Axiom Imaging Solutions, Inc. (hereinafter, "Axiom") for violation of 18 U.S.C. § 1836, the federal Defend Trade Secrets Act ("DTSA"); Tex. Civ. Prac. & Rem. Code § 134A.002, 134A.003(a), *et seq.*, the state Texas Uniform Trade Secrets Act ("TUTSA"); 17 U.S.C. §§ 1201 and 1202, the federal Digital Millenium Copyright Act ("DMCA"); 18 U.S.C. § 1030, the federal Computer Fraud and Abuse Act ("CFAA"); and state law claims for common law fraud and unfair competition. This appeal arises out of the District Court's final judgment as well as several orders that merged into the final judgment. The preceding orders include the District Court's order granting spoliation sanctions and entering default judgment against all Appellants for Appellee's DTSA and TUTSA claims with a damages award of $6,050,000.00 and the District Court's order dismissing the amended counterclaims of Image I and Mr. Shannon.

16

Philips develops, manufactures, and sells medical imaging systems, including MRI machines, to hospitals and other medical facilities. ROA.46.

Appellants are colloquially referred to in the medical imaging industry as "Independent Service Operators," or "ISOs." Appellants own, manufacture, and provide services for MRI Machines, including installation, service, maintenance, and repair in accordance with specifications as required by Food and Drug Administration ("FDA") regulations. ROA.1062-64; ROA.2205-07; ROA.5453:45:9-10. Appellants service MRI Machines manufactured by Appellee Philips, as well as other major manufacturers. ROA.1063-64; ROA. 2207.

## I.    Philips Revokes ISO Access to its Software Service Tools.

Philips' MRI systems utilize Philips software containing "Service Tools" for the installation, diagnosis, servicing, and operation of the MRI system. Philips refers to these Service Tools, broadly, as Customer Service Intellectual Property ("CSIP"). ROA.3351. For years, Philips provided ISOs, including Appellants, with credentials permitting access to certain Service Tools so that the ISOs could maintain and repair MRI machines. ROA.1064; ROA.2207.

On December 18, 2018, Philips released a software security update to its MRI machines. ROA.1064; ROA.2208. Philips referred to this software update as "Service Pack 5." Service Tools contained within Philips' software are categorized as Level 0 through 3. Philips provides ISOs with credentials to access Level 0 Service Tools. With the release of Service Pack 5, previous Level 0 Service Tools were reclassified and now required Level 1 credential access or higher. ROA.9126-27. Functionally, Philips locked out ISOs, including Appellants, from employing certain Service Tools on MRI machines running on Service Pack 5. ROA.1065; ROA.2208.

## II.    Appellants Bypass Philips' Security Measures to Continue Servicing its Customers' MRI Machines.

This reclassification meant that Appellants could no longer provide the same scope of services for Philips MRI machines updated to Service Pack 5. ROA.1067; ROA.2211. By restricting ISO access to Service Tools in Service Pack 5, Philips was denying ISOs access to installation materials that it was required to provide by FDA regulations. ROA.2215; ROA.5345:276:21-277:2.

Prior to Philips' release of Service Pack 5, Appellants learned that Philips may limit Service Tools access in future software updates. In

18

order to maintain access to certain Service Tools, Appellants obtained an unauthorized "IST certificate". ROA.5521:314:13-19; ROA.8955:13-15. An IST certificate acts as a form of access key on Philips MRI machines, granting access to the level of Service Tools to which the certificate-holder is entitled. The unauthorized IST certificate was able to bypass the Service Pack 5 login screen, granting access to Service Tools of Level 2 and below, which included the Level 0 Service Tools that were later reclassified to Level 1 or 2. ROA.6197-98.

Appellants genuinely believed, and continue to believe, that Philips undertook unfair, monopolistic corporate practices to withhold MRI system access from ISOs that FDA regulations legally required Philips to provide. ROA.8920:18-19; ROA.8971:4-9; ROA.8976:24-25; 21 C.F.R. §§ 820.1(a)(1), 820.170 (1996). It is undisputed that Appellants, through use of the unauthorized IST certificate, gained access to portions of Philips MRI systems that Appellants did not have access to before the release of Service Pack 5. ROA.6197-98. However, the record clearly shows that Appellants accessed these Service Tools solely for the purpose of providing the same MRI machine services that they provided prior to the release of Service Pack 5. ROA.8977:9-16.

## III.   Philips Sues Appellants and Appellants Assert Counterclaims.

Philips filed its Original Complaint against Image I and Mr. Shannon ("Original Defendants") on January 21, 2022. ROA.46. Original Defendants filed their Original Answer and Counterclaims on December 6, 2022, asserting counterclaims for, *inter alia*, antitrust violations and unfair competition against Philips, and amended those counterclaims following Philips moving to have them dismissed. ROA.525; ROA.996; ROA.1000; ROA.1060. Philips then moved to dismiss the amended counterclaims. ROA.1192; ROA.1197. The District Court didn't rule on this motion before Philips requested leave to file a Second Amended Complaint to add Image II and Axiom as defendants ("Joined Defendants"), which was granted. ROA.1452; ROA.1487; ROA.19; ROA.1906.

On October 12, 2023, Original Defendants filed an Answer to Philips' Second Amended Complaint; their amended counterclaims had been separately filed on February 16, 2023. ROA.2018; ROA.1060. The purpose of the amendment was to add Image II and Axiom as joined defendants, and Philips affirmatively represented to the District Court that the substance of Philips' claims remained unchanged. ROA.1902.

20

Also on October 12, 2023, Joined Defendants moved to dismiss Philips' Second Amended Complaint and asserted counterclaims against Philips, roughly mirroring those that had been originally asserted by Original Defendants. ROA.2037; ROA.2071; ROA.525.

On October 30, 2023, Philips moved to dismiss the counterclaims of Joined Defendants, and Joined Defendants filed Amended Counterclaims. ROA.2131; ROA.2134; ROA.2203. As will be discussed *infra*, the District Court remarked that these counterclaims were nearly identical to the amended counterclaims of Original Defendants. ROA.2203; ROA.1060. After Joined Defendants' amendment of their counterclaims, Philips filed another motion to have them dismissed. ROA.2257.

Intermixed with the motion practice related to the counterclaims, the District Court ordered that Original Defendants had 14 days to file an amended answer after striking several of their affirmative defenses. ROA.2656; ROA.2177; ROA.2181; ROA.2656. On June 24, 2024, Original Defendants filed their Amended Answer, referring to themselves as "Counter Plaintiffs". ROA.2668. Joined Defendants filed their Original

Answer on July 10, 2024, after their motion to dismiss was denied. ROA.2687; ROA.2754.

## IV. The District Court Dismisses Original Defendants' Counterclaims as Moot and Abandoned.

The District Court, on June 26, 2024, granted Philips' Motion to Dismiss Joined Defendants' Amended Counterclaims. ROA.2698. In short, the District Court ruled that none of Joined Defendants' counterclaims could be maintained and were dismissed for varying reasons. Specifically, the District Court determined that the statute of limitations for antitrust violations began running on December 18, 2022, was not tolled, and the claims were time-barred when not asserted by December 18, 2022. ROA.2709-11. The unfair competition counterclaim was dismissed as a derivative claim that required "independent substantive tort or other illegal conduct to survive," and could not be maintained with all underlying claims being dismissed. ROA.2716.

The District Court, in a footnote, also deemed that the counterclaims of Original Defendants had been either abandoned or rendered moot due to Original Defendants not seeking leave to file second amended counterclaims following the filing of Philips' Second Amended Complaint. ROA.2718. Based on this premise, the District Court ruled

22

that no operative counterclaims remained for any of the Appellants. ROA.2717-18. Original Defendants timely moved for the District Court to reconsider its order, but this motion was denied. ROA.2928; ROA.2930; ROA.3047. This order forms part of the basis for the instant appeal.

## V.    The District Court Grants Death-Penalty Sanctions Against Appellants, Awarding Philips $6.05M in Damages.

Following the close of discovery, Philips filed a Motion for Spoliation Sanctions on September 12, 2024. ROA.4696; ROA.4699. The basis for Philips's motion was that Mr. Shannon, individually and as a corporate representative, testified that he had deleted log files on Philips MRI machines that Appellants serviced, texted an employee named Roger West to delete a log entry during litigation, and that Appellants disabled Philips' remote monitoring on MRI machines. ROA.4706-07. Philips contended that the deletions of log files impaired its ability to put on its case-in-chief, and that severe sanctions were warranted under Fed. R. Civ. P. 37(e). ROA.4721-27.

The District Court set a hearing on the Motion for Spoliation Sanctions for October 16, 2024, and set an expedited briefing schedule. ROA.4746. On September 27, 2024, Appellants filed their response to Philips' Motion for Spoliation Sanctions, with their brief and exhibits

23

filed under seal. ROA.4895; ROA.16201; ROA.4897; ROA.16233-17359. Appellants, generally, argued that Philips has no actual evidence of deletion and that Philips conducted no third-party discovery to demonstrate its burden. ROA.16209-13.

On October 16 and 17, 2024, the District Court held a hearing on Philips' Motion for Spoliation Sanctions with witness testimony and argument by counsel. ROA.8772; ROA.9024. To demonstrate their burden on spoliation, Philips relied exclusively on Mr. Shannon's own admissions of limited and situational deletions, and on a text message Mr. Shannon sent to Mr. West, telling him to delete a log entry. ROA.8778:18-23; ROA.8780:10-23; ROA.8787:13-19. Mr. Shannon testified at the hearing, denying that his deletions encompassed all logs and contending that certain deleted logs would have been backed up on the systems. ROA.8968:1-23; ROA.8983:12-17; ROA.8986:11-23; ROA.8989:15-18; ROA.9013.2-7; ROA.8998:24-8999:6. Philips put on no tangible evidence to demonstrate what was actually deleted, or that any logs were actually unavailable or irrecoverable. ROA.8856:5-12. Philips offered no evidence that it conducted third party discovery to obtain any such logs or evidence of deletion. ROA.8855:24-8856:4.

After the hearing, the District Court issued a Memorandum Opinion and Order finding, *inter alia*, that the District Court had the power to award sanctions under Fed. R. Civ. P. 37(e), that Mr. Shannon's testimony was not credible, that the Appellants spoliated evidence in violation of Fed. R. Civ. P. 37(e), that Appellee was substantially prejudiced by Appellants' spoliation, and that, by a preponderance of the evidence, Appellants spoliated evidence with the intent to deprive Appellee of that evidence in the litigation and are therefore subject to sanctions under Fed. R. Civ. P. 37(e)(2). ROA.5902; ROA.5910-23. The District Court entered default judgement against Appellants, and for Appellee, on Philips' DTSA and TUTSA claims, and awarded Philips $6.05m in damages. ROA.5929.

Subsequently, the District Court issued a Memorandum Opinion and Order that, *inter alia*, granted in part and denied in part Philips' Partial Motion for Summary Judgment. ROA.6195; ROA.3338. The District Court granted summary judgment on liability for Philips as to its CFAA, DMCA, and fraud claims against Appellants, and stated that the issues of Appellants' liability to Philips for its unfair competition claims, whether Philips' CFAA claims against Joined Defendants were

time-barred, and damages for Philips' remaining claims would be resolved at trial. ROA.6235.

The District Court held a hearing on March 21, 2025 to consider the stipulated Final Judgment. At the hearing, the Parties stated on the record that the intention of the Final Judgment was that the Appellants reserved their right to appeal the District Court's sanctions order, the underlying summary judgment order, and the entire judgment, that the Appellee reserved its right to seek fees and costs, and Appellants agreed to the terms of the permanent injunction entered against Appellants as to form, only. ROA.9245-49. This appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court's decision to grant Philips' Motion for Spoliation Sanctions was incorrectly decided on five grounds. First, the District Court failed to apply the correct evidentiary standard in determining Appellants demonstrated an intent to deprive Philips of evidence in the litigation, as necessary to issue sanctions under Fed. R. Civ. P. Rule 37(e)(2). The District Court erred when it failed to apply the heightened clear and convincing evidence standard in making its determination of "intent to deprive," as supported by existing Fifth Circuit precedent for determining a litigant's bad faith in a terminating sanctions context. The standard of proof for sanctions under Rule 37(e)(2), however, does not appear to have been previously decided by the Fifth Circuit, and has been decided differently by district courts within the circuit.

Second, the District Court erred in finding that the allegedly spoliated electronically stored information ("ESI") could not be recovered or replaced through additional discovery based on the evidence presented. This finding is a prerequisite for a court to award any Rule 37(e) sanctions. The record contains no actual evidence of ESI deletion or loss of ESI. Further, Philips' expert witness testified that it could assess

which Service Tools Appellants utilized based on other record evidence, even if certain log files had been deleted. Philips did not carry its burden on this issue.

Third, the District Court erred in determining that Philips showed it was substantially prejudiced by the allegedly deleted ESI, as is required in the Fifth Circuit for heightened sanctions under Fed. R. Civ. P. Rule 37(e)(2). Philips failed to show substantial prejudice because it could not point to any information that it needed and could not obtain as a result of Appellants' alleged conduct.

Fourth, the District Court erred in determining that no lesser sanction than default judgment would adequately redress the loss of the ESI and allow for a trial on the merits. Record testimony shows that Philips could have, with proper instructions to the jury from the District Court, put on proof of its damages and Appellants' liability at trial. Sanctions more severe than necessary to redress the harm done should not be awarded, and default judgment was inappropriate here because lesser sanctions would have cured any prejudice to Philips.

Fifth, the District Court erred in determining the quantum of damages to be awarded for the misappropriation of trade secret claims on which the District Court granted default judgment.

Philips' damage model improperly applied the entire market value rule and failed to apportion its damages to allow calculation for fewer than 511 allegedly misappropriated trade secrets. Further, the District Court ignored evidence of Appellants' use of relevant trade secrets in measuring damages, and improperly included sanctions related to pending claims in the award of trade secrets misappropriation damages.

Lastly, the District Court erred in ruling that Original Defendants' Amended Counterclaims were mooted. The law reflects that counterclaims are not automatically abandoned if not replead in response to an amended complaint when an intent to pursue the claims is manifested. The undisputed record reflects such intent by Original Defendants.

For these reasons and those explained below, Appellants request that the Court conclude that the District Court, in its sanctions order, erred in its application of a preponderance of the evidence standard, its determination that the ESI could not be restored or replaced, its

determination that Philips was substantially prejudiced by the spoliated ESI, and its failure to employ lesser available sanctions. Appellants further request the Court conclude that the District Court erred in its calculation and award of $6.05M in damages to Philips. Appellants further request that the Court conclude that the District Court erred in dismissing Original Defendants' Amended Counterclaims. For each of these errors, collectively or in the alternative where applicable, Appellants request that the Court vacate or reverse the District Court's orders and rulings, and remand for reconsideration and further proceedings as appropriate.

## ARGUMENT

The District Court erred in its application of the evidentiary standard to award terminating sanctions on Philips' DTSA and TUTSA claims. The District Court further erred when it determined that the ESI at issue could not be restored or replaced. The District Court further erred when it determined that Philips showed it had been substantially prejudiced by the lost or deleted ESI. The District Court further erred by failing to levy lesser sanctions that would redress the loss and allowed for a trial on the merits. The District Court further erred by awarding damages using an improper method of calculation and without adequate, available record support, and by awarding unspecified damages for still-live claims. Finally, the District Court erred by misapplying the law in its constructive dismissal of Original Defendants' counterclaims for antitrust violations and unfair competition.

I.    **The District Court erred by Applying the Wrong Evidentiary Standard for the "Intent to Deprive" element under Rule 37(e)(2).**

A.    **The Standard of Review is *De Novo*.**

A question of which evidentiary standard applies in a given case is a question of law and is reviewed *de novo. U.S. v. Real Prop. Located at 1407 N. Collins St., Arlington, Texas*, 901 F.3d 268, 273 (5th Cir. 2018)

31

*Robert v. Tesson*, 507 F.3d 981, 993 (6th Cir. 2007) (citing *United States v. Tocco*, 200 F.3d 401, 428 (6th Cir. 2000). An abuse of discretion standard has been used in cases involving sanctions under Fed. R. Civ. P. 37(e)(2), with conclusions of law reviewed *de novo* and subsidiary factual findings for clear error. *Skanksa USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1310-11 (11th Cir. 2023) (citing *Common Cause Ga. v. Georgia*, 17 F.4th 102, 107 (11th Cir. 2021); *Calsep A/S v. Dabral*, 84 F.4th 304, 310 (5th Cir. 2023 (citing *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019)).

### B.     Rule 37(e)(2) Sanctions Run Parallel to a Bad Faith Analysis under a Court's Inherent Sanctioning Powers.

In the instant case, the District Court applied a preponderance of the evidence standard to its Rule 37(e)(2) analysis and explained the "intent to deprive" analysis is interchangeable with the analysis for bad faith in the Fifth Circuit. ROA.5915; ROA.5919. The District Court cites to *BHI Energy I Power Servs. LLC* in explaining the interchangeability of the two analyses. ROA.5919; *BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*, No. 3:22-CV-1981-L-BN, 2024 WL 1607065, at \*13 (N.D. Tex. Apr. 12, 2024). This equivalency is also recognized in *Skanksa USA* by the Eleventh Circuit. *Skanksa*, 75 F.4th at 1312.

32

The Western District of Texas has used the same bad faith analysis for "intent to deprive," but applied a clear and convincing evidence standard. *Cornejo v. EMJB, Inc.*, No. SA-19-CV-01265-ESC, 2021 WL 4526703 at *3, *5 (W.D. Tex. Oct. 4, 2021) (citing *In re Sealed Appellant*, 194 F.3d 666, 670-71 (5th Cir. 1999)). The application of different evidentiary standards to the same analysis within the same circuit creates inconsistency of application.

The Fifth Circuit has previously addressed and clarified legal interpretations to resolve uncertainty where inconsistent opinions from district courts within the circuit "engendered confusion in [the] district courts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Grp. Ltd.*, 818 F.3d 193, 201 (5th Cir. 2016) (clarifying the rule on improper joinder analysis where several district courts in the circuit had applied the law contrary to a previous Fifth Circuit opinion).

C.   **Existing Fifth Circuit Precedent Supports the Application of a Clear and Convincing Evidence Standard to Determining a Litigant's "Intent to Deprive" under Rule 37(e)(2).**

The Fifth Circuit has long held that a clear and convincing evidence standard is used to determine whether bad faith exists to award sanctions against a litigant. *See, e.g., Vikas WSP, Limited v. Economy*

33

*Mud Products Company*, 23 F.4th 422, 455 (5th Cir. 2022); *In re Moore*, 739 F.3d 724, 729-30 (5th Cir. 2014); *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001). The Fifth Circuit has previously addressed sanctions under Rule 37(e)(2) in its unpublished opinion in *Eagan v. Walgreen Company*, and while the Fifth Circuit panel analyzed bad faith alongside "intent to deprive," it did not discuss the evidentiary standard. *Eagan v. Walgreen Company*, No. 21-20352, 2022 WL 683636, at *3 (5th Cir. Mar. 8, 2022). In *Calsep A/S*, the Fifth Circuit similarly did not reach this issue. *Calsep*, 84 F.4th at 310-11.

With the 2015 amendment to Fed. R. Civ. P. 37(e), the appropriate evidentiary standard for heightened sanctions under Rule 37(e)(2) appears to be an issue of first impression before the Fifth Circuit. The opinions from the *Vikas*, *Moore*, and *Crowe* courts all recognize a clear and convincing evidence standard in reviewing bad faith findings pursuant to inherent power sanctions. Further, an "intent to deprive" being universally tantamount to analyzing bad faith supports the Fifth Circuit concluding the same clear and convincing evidence standard should apply. The Fifth Circuit has also expressed a heightened standard for litigation-terminating sanctions under Rule 37 with a four-part test

34

that must be met, but has not outlined the evidentiary standard by which this test should be applied specifically under Rule 37(e)(2). *See Calsep A/S*, 84 F.4th at 311; *Law Funder, L.L.C.* 924 F.3d at 758-59; *FDIC v. Conner*, 20 F.3d 1376, 1380-81 (5th Cir. 1994).

A single appellate circuit has considered the proper evidentiary standard under the 2015 amendment to Rule 37(e)(2), which is the Second Circuit's opinion in *Hoffer v. Tellone*, 128 F.4th 433, 439-40 (2d Cir. 2025). In *Hoffer*, the Second Circuit reasoned that the lower preponderance of the evidence standard applies to sanctions under Rule 37(e)(2), saying a higher evidentiary standard was unneeded in the absence of "important individual interests." *Id.* at 439.

Conversely, Fifth Circuit decisions have highlighted constitutional concerns when it comes to issuing terminating sanctions. *See, e.g.*, *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994) (in reviewing sanctions under Rule 37(b)(2), "dismissal is a severe sanction that implicates due process."); *Brinkmann v. Abner*, 813 F.2d 744, 749 (5th Cir. 1987) (holding that due process considerations require review to be "particularly scrupulous" where a sanction of dismissal was imposed under Rule 37(b)(2)(C)); *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d

35

894, 898 (5th Cir. 1997) (due process required remand for assessing a lesser available sanction than dismissal following a litigant's fabrication of evidence). The due process concerns, and the preference of the law to resolve claims on the merits, illustrate that these previous Fifth Circuit decisions support the application of a clear and convincing evidence standard to find "intent to deprive" under Rule 37(e)(2) rather than the lower standard set forth by the *Hoffer* court. *Conner*, 20 F.3d at 1380.

The nature of the sanctions permitted under Rule 37(e)(2), which includes a presumption that lost ESI was unfavorable, adverse jury instructions, or dismissal or default, share a substantially similar severity to those considered in the Fifth Circuit's jurisprudence on a district court's exercise of its inherent powers to sanction for civil contempt, impose attorneys' fees, or impose any punitive remedy. Fed. R. Civ. P. 37(e)(2); *Cornejo*, 2021 WL 4526073, at *3 (citing *In re Sealed Appellant*, 194 F.3d at 670-71). Elsewhere, courts have also found that, in the inherent powers context, an entry of default is "fundamentally punitive," and is analogous to a "depriv[al] of liberty, property, or reputation" to warrant the use of a clear and convincing evidence standard. *Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1476-

36

78 (D.C. Cir. 1995). The *Shepherd* court also reasoned that heightened proof is appropriate when the "predicate misconduct at issue involves allegations of fraud or some other quasi-criminal wrongdoing by the defendant." *Id.* at 1477. Here, Philips asserted a claim of fraud against all Appellants, and the allegation of Appellants concealing their fraudulent activity underpins those claims. ROA.1934-35.

Based on established Fifth Circuit precedent with regard to determining bad faith by clear and convincing evidence and the due process concerns associated with assessing terminating sanctions, the court's application of a preponderance of the evidence standard to its "intent to deprive" analysis was improper. *See Vikas WSP, Limited*, 23 F.4th at 456 (holding a sanctions order can be vacated where a district court abused its discretion); *Shepherd*, 62 F.3d at 1478 ("Because the district court did not apply this [clear and convincing evidence] standard...we remand for reconsideration.").

II.  **The Record Evidence does not Support the District Court's Finding that the Lost ESI Could not be Replaced Through Additional Discovery.**

A.  **The Standard of Review is Clear Error.**

When reviewing a district court's abuse of discretion, subsidiary or underpinning factual findings are reviewed for clear error. *Skanksa USA*

37

*Civil Southeast Inc.*, 75 F.4th at 1310-11 (citing *Common Cause Ga.*, 17 F.4th at 107); *Calsep A/S*, 84 F.4th at 310 (citing *Law Funder, L.L.C.*, 924 F.3d at 758).

> **B.     Spoliation Sanctions under Rule 37(e) are Disfavored when Adequate Discovery and Recovery Efforts have not been Performed to Determine the Purportedly Lost ESI Cannot be Restored or Replaced.**

Courts have found that sanctions under Rule 37(e) "are generally only appropriate 'where extensive [ESI] recovery efforts have failed, or after forensic review gives the movant a much better idea of the quantity and nature of unproduced, deleted ESI.'" *Envy Hawaii LLC v. Volvo Car USA LLC*, No. 17-00040 HG-RT, 2019 WL 1292288, at *3 (D. Haw. Mar. 20, 2019) (quoting *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 108 (E.D. Va. 2018). Similarly, the 2015 Advisory Committee noted, "Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e), 2015 Advisory Committee Notes. The District Court noted this requirement in its Memorandum Opinion and Order Granting Sanctions. ROA.5912-13.

However, while the District Court identified the correct standard, it erred in its analysis. The *Envy Hawaii LLC* court noted Volvo's

38

concession that it had not subpoenaed any records from third parties and ruled that sanctions under Rule 37(e) are not available when the information may be sought from third parties and the movant had not demonstrated that the information was irretrievable. *Envy Hawaii LLC*, 2019 WL 1292288, at *3.

### C. The District Court Clearly Erred When It Found that the Allegedly Spoliated ESI Could Not be Restored or Replaced.

The District Court concluded the sanctions hearing testimony was sufficient to establish Philips would be unable to locate the MRI machines on which the logs would be kept and, further, that it was likely *all* of the log files would have been deleted by Appellants. ROA.5913. This finding of fact was clearly erroneous for several reasons.

First, the record is devoid of third-party discovery by Philips as to the data contained on the MRI machines at issue. Indeed, the only third-party subpoena for records that Philips issued in the entirety of the case sought the bank records of Appellants from Comerica Bank in April 2023, a full 18 months before the October 2024 sanctions hearing. ROA.1377-80. This, alone, should have given the District Court pause based on the guidance of *Envy Hawaii LLC*, which it cited to as part of its evaluation. ROA.5912-13.

Second, during the sanctions hearing, Jacqueline Dickson, Philips' Director of CSIP, gave testimony that illustrated the patent incompleteness of Philips' investigation. Ms. Dickson testified that she would have been the only Philips employee to perform investigations into MRI machines, that she was unaware of any instance where Philips went to the physical site of an MRI machine to investigate, and that she was not aware of any third-party subpoenas seeking MRI machine log files. ROA.8854:5-10; ROA.8858:17-8860:5; ROA.8856:3-4.

Most tellingly, Ms. Dickson, who testified she was primarily responsible for Philips' investigation into the MRI machines at issue, said, "…I, personally, have not been able to prove that," in response to being asked whether she had "knowledge of any location where [Appellants] have deleted any log files." ROA.8856:5-12. Ms. Dickson attempted to sidestep the question, somewhat, with her following comments related to logs being unavailable if Philips' remote monitoring was turned off, but the response was the same: Philips could not point to a single instance where it could identify any log files had been deleted by Appellants. ROA.8856:9-12. Proving the point, Ms. Dickson testified, "I haven't been able to identify which logs have actually been deleted,"

**40**

when asked why she could not testify as to whether Appellants had deleted system log files. ROA.8850:17-20.

i. *Philips' Only Log File Evidence was Sourced from Active Remote Monitoring Software, and Philips Conducted No Substantive Third-Party Discovery to Obtain Actual Evidence of Deletions.*

Ms. Dickson's testimony as to the alleged presence, or not, of log files was predicated entirely on the MRI machines remotely reporting their activity to Philips' internal servers. ROA.8856:10-12. The fact that remote monitoring for certain MRI machines was not sending data directly to Philips is not the same as prima facie evidence that those log files were deleted, nor does it demonstrate that they could not be restored or replaced. Ms. Dickson testified that Philips was capable of issuing a third-party subpoena for the information they needed if they chose not to go to the physical location of an MRI machine, but instead, Philips did neither.[1] ROA.8856:3-4; ROA.8844:7-10. The requirements of Rule 37(e)

---

[1] In Philips' brief supporting its Motion for Leave to File a Motion for Spoliation Sanctions, Philips represented that it was relying upon Appellants to produce responsive log documents, and that Philips only became aware of its inability to prove its damages based on the documents Appellants produced shortly before the close of discovery. ROA.4620. However, this is inconsistent with Philips' prior representations to the District Court. At the September 21, 2023 hearing on several discovery disputes, counsel for Philips represented that it "hadn't had the opportunity

are that the ESI actually be lost, and remote monitoring being deactivated is not dispositive or tantamount to the deletion of any ESI at issue, as Philips's expert, Dr. Orso, contended during his sanctions hearing testimony. ROA.9080:14-19; *Brown v. SSA Atlantic, LLC*, No. CV419-303, 2021 WL 1015891 at *3 (S.D. Ga. Mar. 16, 2021) (finding that deactivation of a Facebook account does not amount to spoliation because there is no deletion). The *Brown* court's decision is illustrative of the issue here—the Appellants' deactivation of Philips' remote monitoring software, on its own, does not delete any ESI, and it would still be contained on any MRI machine absent any other conduct. Further, Ms. Dickson did not know the cause for any instance where Philips stopped receiving remote monitoring data and could not positively identify any MRI machine where Appellants deactivated the remote monitoring on the system. ROA.8875:19-8877:2. Even if turning off remote monitoring to MRI machines did qualify as spoliation, Philips presented no direct evidence of Appellants actually doing so.

---

to go and physically inspect the systems to confirm that they're being – they're telling the truth." ROA.8753:6-10. This occurred after Philips deposed Mr. Shannon on September 1, 2023, roughly 10 months before the close of discovery, during which Mr. Shannon testified regarding log file deletion. ROA.4646.

Philips, in its Motion for Spoliation Sanctions, relied on Mr. Shannon's admissions to deleting log files and occasionally deleting dongle.his files to support its argument that the alleged spoliation of Appellants warranted enhanced sanctions. ROA.4626. However, Ms. Dickson's testimony made it apparent that Philips had not performed the third-party discovery it needed to in order to actually fulfill its burden of showing that any spoliated ESI could not be replaced, which the District Court recognized was Philips' to bear. ROA.5909. Similarly, other courts have determined that while a fact balancing can be performed, placing the burden of proof on the movant is appropriate, and the Advisory Committee on the Rule contemplates the same. *See Flores v. AT&T Corp.*, No. EP-17-CV-00318-DB, 2018 WL 6588586, at \*7 (W.D. Tex. Nov. 8, 2018) (citing Fed. R. Civ. P. 37(e)(1) 2015 Advisory Committee Notes).

ii.    *Philips Failed to Demonstrate that the Allegedly Lost ESI Could not be Restored or Replaced.*

The Court in *Envy Hawaii LLC* outlined that Rule 37(e) spoliation sanctions were premature prior to extensive recovery efforts failing or forensic review to provide a much clearer picture of the extent of deletions. *Envy Hawaii LLC*, 2019 WL 1292288 at \*3. Plainly, neither prong is met here because Philips performed none of the recovery

43

attempts or forensic review necessary to carry its burden of diligence as to the ESI they claim was lost. The District Court improperly deflects these deficiencies with a reference to its determination that Mr. Shannon's testimony was not credible. From this, the District Court theorized that Mr. Shannon most likely deleted *all* logs. ROA.5913.

> iii. *The District Court's Determination that Mr. Shannon was not Credible is not Proof of the Opposite Assertion.*

There is no record evidence to controvert Mr. Shannon's contention that he only deleted certain log files while leaving others, and the District Court cites to none. ROA.5913. In *Travelhost, Inc.*, the Fifth Circuit reasoned, "we recognize the deference appropriate in review of a district court's credibility determination. However, disbelief of a witness's testimony is not sufficient to carry a plaintiff's burden or support the district court's finding to the contrary." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 965 (5th Cir. 1995) (internal citations omitted). The District Court's disbelief here is not enough for Philips to satisfy its own burden of recovery efforts or forensic evaluation under *Envy Hawaii LLC. See also Nishikawa v. Dulles*, 356 U.S. 129, 137 (1958) ("Nor can the district judge's disbelief of petitioner's story of his motives and fears fill the

44

evidentiary gap in the Government's case."). Philips, as the movant, had to satisfy the *Envy Hawaii LLC* standard so that the District Court could support a finding that the ESI was unable to be restored or replaced—the record shows it did not do so.

To the extent that Philips may contend the District Court was still within its discretion to determine the ESI was not restorable or replaceable based on the testimony of its expert witness, Dr. Alessandro Orso, Ph.D., this Court should reject that argument as Dr. Orso's testimony does not stand for that contention. Dr. Orso testified that each log file was a necessary piece of a "puzzle" to fully evaluate what activity had taken place on a system. ROA.9068:9-15. However, while Dr. Orso testified that he needed the logs, he did not testify that he identified any missing or deleted logs during his investigation that rendered him unable to form an opinion as to activity on a system. Rather, he testified as to his opinion on Appellants' alleged circumvention and misappropriation based upon the log files and data he received for review. ROA.9074:9-19. While Dr. Orso's testimony speaks to the issue of Appellants' conduct of accessing Service Tools, it does nothing to address or cure Philips' failure

to perform the discovery it needed to satisfy all elements of Rule 37(e) before the District Court may consider sanctions. Fed. R. Civ. P. 37(e).

Without any demonstration in the record that the lost ESI could not be restored or replaced due Philips' failure to perform adequate third-party discovery on the issue, the District Court clearly erred in making its determination that this prerequisite had been satisfied by Philips, and it was therefore precluded from issuing Rule 37(e) sanctions. Per the analysis in *Envy Hawaii LLC*, the Motion for Spoliation Sanctions should have been denied. In light of it being granted, the District Court abused its discretion and the appropriate remedy is to reverse the District Court's Sanctions Order, and remand for further proceedings.

## III. The Record Evidence does not Support a Finding that Philips was Substantially Prejudiced by ESI Spoliation.

### A. The Standard of Review is Clear Error.

When reviewing a district court's abuse of discretion, subsidiary or underpinning factual findings are reviewed for clear error. *Skanksa USA Civil Southeast Inc.*, 75 F.4th at 1310-11 (citing *Common Cause Ga.*, 17 F.4th at 107); *Calsep A/S*, 84 F.4th at 310 (citing *Law Funder, L.L.C.*, 924 F.3d at 758).

46

B.    **The Heightened Standards for Terminating Sanctions under Rule 37(e)(2) Require a Finding that the ESI Deletion Substantially Prejudiced the Opposing Party.**

As noted in *Calsep A/S* the Fifth Circuit employs a heightened standard that must be satisfied by meeting a four-part test before "litigation-ending sanctions" may be entered. *Calsep A/S*, 84 F.4th at 311 (citing *Conner*, 20 F.3d at 1380-81). One prong of this test is that the spoliation of ESI must have "substantially prejudiced the opposing party." *Calsep A/S*, 84 F.4th at 311 (internal quotations omitted). The finding of prejudice can be made "when a party's case-in-chief is seriously and gravely impacted." *Id.* at 314. Specifically, the prejudice must be caused by conduct of the party against who the sanctions were sought. *Prince v. Poulos*, 876 F.2d 30, 32-33 (5th Cir. 1989).

C.    **Any Prejudice to Philips' Case-in-Chief was Caused by its own Discovery Inaction, and was not Caused by Appellants' Conduct.**

The courts in *Calsep A/S* and *Prince* have set forth a standard that substantial prejudice is a requirement for terminating sanctions to be awarded, and that it must be the conduct of Appellants that was the cause of that prejudice. *Calsep A/S*, 84 F.4th at 314; *Prince*, 876 F.2d at 32. The District Court reached its finding that Philips was substantially prejudiced in clear error because any prejudice that Philips may have

47

suffered was entirely self-inflicted, effectively preempting any spoliation by Appellants. ROA.5920.

> i. *Philips Presented no Forensic Evidence to Support the Existence or Extent of any Spoliation and Philips' Only Evidence of Spoliation was Predicated on Appellants' Own Statements.*

In its Memorandum Opinion and Order, relying on *Calsep A/S*, the District Court found that Philips was prejudiced based on Mr. Shannon's testimony that he had deleted some service log files and dongle.his log files, and Dr. Orso's testimony that, without all of the log files, he could not conclude which Service Tools were used by Appellants. ROA.5920. Dr. Orso's testimony, however, was completely hypothetical. ROA.9079:14-9080:13. Dr. Orso did not testify that he had copies of log files from MRI machines at issue where some logs were missing and he could not reach an opinion on the degree of Appellants' trade secrets misappropriation because of that deletion. Rather, Dr. Orso testified that *if* he reviewed a set of log files that was missing the service logbook, there would be no evidence that a certificate was used, or by whom, and that this would impact his ability to perform a full analysis. ROA.9079:14-9080:7. Dr. Orso did not testify as to a single instance where he could not opine as to Appellants' conduct on an MRI machine because of deleted

48

logs. The question asked to Dr. Orso by Philips' counsel was, "…if we assume [Appellants] only deleted the service logbook file…how would that impact your analysis?" and this only further demonstrates that Philips and its experts *didn't know* what, if anything, had been deleted by Appellants from any MRI machine at issue in the case and the prejudice was purely hypothetical. ROA.9082:9-12. Dr. Orso's expert report also makes clear that he did not examine any MRI machine logs where he identified missing or deleted log files that impacted his analysis. ROA.11627-32. If Philips, or its experts, could have pointed to a singular instance of a log deletion by Appellants, they undoubtedly would have done so, and this explains Philips' reliance on Mr. Shannon's admissions of log deletion and his text message to Roger West, in an attempt to satisfy its burden of proof by asking the District Court to assume those admissions mean that there are no logs anywhere that Philips could have located. ROA.4637-38.

ii. *Philips Knowingly Failed to Perform Necessary Discovery to Prove its Case or Otherwise Carry its Burden of Proof to Show Sanctions were Warranted, and any Prejudice to Philips is not Attributable to Appellants.*

The inability of Dr. Orso to point to any forensic evidence of a deletion by Appellants underscores the root of the defect in the District Court's finding that Philips was prejudiced. Philips knew and represented that it needed to conduct third-party discovery on this issue as of September 2023, over 9 months before the eventual close of the discovery period on July 2, 2024. ROA.5921; ROA.8753:6-10; ROA.2581. Specifically, Philips wanted to independently verify the representations of Appellants. ROA.8753:6-10. Philips, however, conducted no third-party discovery on the issue in that time and presented no evidence of actual log deletions.

With discovery closed and its Motion for Spoliation Sanctions before the District Court, Philips attempted to posthumously explain why it was unable to obtain logs from the MRI machines at issue. ROA.8858:17-8860:5; ROA.8856:3-4. Ms. Dickson also intimated that the cost to have its engineers physically go to a location to attempt to collect logs was too high, saying such efforts would be in the "thousands of dollars per

50

Case: 25-10549   Document: 39   Page: 51   Date Filed: 09/15/2025

system." ROA.8845:21-8846:3. Of course, such a discovery cost hardly seems prohibitive when Philips put forth a $12.1m damages theory for reasonable royalties on its trade secrets misappropriation claims in this case, or when Philips submitted a Motion for Attorneys' Fees in the amount of $2,826,620.63 after the entry of Final Judgment. ROA.5925; ROA.7936.[2]

While it may stand to reason that Philips would have needed to spend, potentially, tens to hundreds of thousands of dollars to send an engineer to collect MRI logs from each of the locations identified as being serviced by Defendants, Philips could have shown a representative sample of Appellants' allegedly rampant spoliation and the impact thereof for a fraction of that amount, or subpoenaed images of the MRI hard drives for a more economical approach. However, Philips did not even do that. Instead, the logs that Philips had and that Dr. Orso analyzed exhibited none of the deletions that Philips purported to be

---

[2] Appellants do not cite Philips' attorneys' fees request to criticize the amount, only to juxtapose what Philips incurred for that litigation cost relative to a comparatively nominal cost estimate to perform discovery that Philips asserted was integral to its damages model. ROA.4622.

51

prejudiced by, and they point to none that do. ROA.9074:9-19; ROA.9082:9-24.

Courts have rejected awarding Rule 37(e) sanctions in analogous circumstances where the movant "deci[ded] not to pursue obvious non-party discovery leads." *Best Payphones, Inc. v. City of New York*, No. 1-CV-3924 (JG) (VMS), 2016 WL 792396, at *3 (E.D.N.Y. Feb. 26, 2016); *see also R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 25 (S.D.N.Y. 2010) ("the absence of prejudice can be shown by demonstrating…that during discovery they never asked for the evidence later shown to have been spoliated."). Similarly, another court declined to award sanctions against a defendant for spoliation because "it [was] also plaintiff's own actions or omissions that [left] them without evidence that might have been helpful at trial." *Klezmer ex rel. Desyatnik v. Buynak*, 227 F.R.D. 43, 52 (E.D.N.Y. 2005). The *Klezmer* court reached this finding following the plaintiff in that case failing to request a vehicle inspection or to depose the defendant's expert when more than a year had passed following the plaintiff being made aware of these options after the expert's report was provided. *Id.* This case is analogous to Philips' knowledge of its need to

inspect the MRI machines in September 2023, particularly following Mr. Shannon's deposition, but it took no action. ROA.4646.

Philips' lack of development of its case through third-party discovery should have been fatal to its Motion for Spoliation Sanctions, and the District Court committed clear error in determining that Philips had been substantially prejudiced to support heightened sanctions being warranted. ROA.5920; *Calsep A/S*, 84 F.4th at 314. Per its own pleadings, Philips only had a "few" log files from the involved MRI machines for its experts to evaluate. ROA.4710. But Philips did not have those log files because the record shows Philips did nothing to obtain them if they had not been remotely uploaded directly to Philips' servers by the third-party owners of those machines. ROA.8858:17-8860:5; ROA.8856:3-4. Philips presented no evidence of logs actually being missing from any MRI machine at a location serviced by Appellants. ROA.8856:5-12.

> iii.  *The District Court Clearly Erred by Finding that Appellants' Conduct Substantially Prejudiced Philips, Departing from Established Precedent on Philips' Burden of Proof.*

It is inconsistent with the Fifth Circuit's opinions in *Calsep A/S* and in *Prince* for the District Court to find that Appellants are responsible for prejudicing Philips when Philips' inability to prove its case—or at least

53

its inability to show that it was prejudiced from doing so in seeking sanctions—was caused by its own inaction. *Calsep A/S*, 84 F.4th at 314; *Prince*, 876 F.2d at 32. The District Court incorrectly ruled that Philips was prejudiced because it did not have evidence of its damages. ROA.5920. In *Calsep A/S*, which the District Court heavily relied upon, the files that limited the expert's ability to render an opinion were demonstrated to have been actually deleted and modified by the appellant in that case, Dabral. *Calsep A/S*, 84 F.4th at 309-10. The district court in *Calsep A/S*, whose terminating sanctions order was affirmed in the opinion, was able to reach its determination that Calsep A/S had been prejudiced by Dabral because the record contained substantial evidence of the extent of the deletions and file modifications, without speculation, and left Calsep A/S's expert unable to provide a supported opinion. *Id.* at 314-15.

The facts in the instant case are inapposite to *Calsep A/S*. There is no actual evidence of deletion that Philips has presented to demonstrate the degree of its prejudice. Philips' "case-in-chief [would be] seriously and gravely impacted" because Philips didn't do the discovery to carry its burden at trial, or on its sanctions motion. *Id.* at 314. Philips could never

54

have presented the log files it contends would show its damages at trial, in any state of spoliation, not because of any act of Appellants, but because of its own inaction. *See, e.g.*, *Best Payphones, Inc. v. City of New York*, No. 1-CV-3924 (JG) (VMS), 2016 WL 792396, at *3 (E.D.N.Y. Feb. 26, 2016); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 25 (S.D.N.Y. 2010); *Klezmer ex rel. Desyatnik v. Buynak*, 227 F.R.D. 43, 52 (E.D.N.Y. 2005).

Philips presented speculative testimony on what might be missing from logs it never attempted to obtain during the discovery period and asked the District Court to fill in the blanks, which it erred by obliging. Given the clear record with no forensic evidence of deletion and Philips' own lack of discovery such that it could not have ever presented those logs to prove its case or its entitlement to sanctions, it is clear error for the District Court to have determined that Philips was prejudiced by Appellants. Without substantial prejudice, terminating sanctions could not be granted by the District Court. *Calsep A/S*, 84 F.4th at 311; *Prince*, 876 F.2d at 32. With the standard not met, vacating the District Court's Sanctions Order and remanding is warranted.

IV. **The District Court Erred by Entering Default Judgment Because a Lesser Sanction was Proven to be Sufficient to Redress the Loss and Allow for a Trial on the Merits.**

A.    **The Standard of Review is Clearly Erroneous.**

When reviewing a district court's abuse of discretion, subsidiary or underpinning factual findings are reviewed for clear error. *Skanksa USA Civil Southeast Inc.*, 75 F.4th at 1310-11 (citing *Common Cause Ga.*, 17 F.4th at 107); *Calsep A/S*, 84 F.4th at 310 (citing *Law Funder, L.L.C.*, 924 F.3d at 758).

B.    **More Severe Sanctions Should Only be Used when Lesser Sanctions Would Not Adequately Redress the Loss.**

The Advisory Committee counseled that "courts should exercise caution, however, in using the measures specified in [Rule 37](e)(2). Finding an intent to deprive…does not require a court to adopt any of the measures listed in…[Rule 37](e)(2)." Fed. R. Civ. P. 37(e), 2015 Advisory Committee Notes. The *Calsep A/S* court also noted that "a court must consider whether some lesser sanction would've 'substantially achieve[d] the desired deterrent effect' without ending the case." *Calsep A/S*, 84 F.4th at 315 (quoting *Conner*, 20 F.3d at 1381). *Calsep A/S* does opine that the consideration of lesser sanctions wasn't improper despite not

being "greatly detailed," stating that the district court "did nod to the possible implication of other sanctions," in the case on appeal. *Id.* at 315.

### C. The District Court's Consideration of Lesser Sanctions, and Decision Not to Utilize them, was Based on an Erroneous Factual Conclusion.

Here, the District Court admittedly did consider lesser sanctions and concluded that lesser sanctions would be ineffective. ROA.5921. The District Court reasoned that Philips was left with no recourse to prove Appellants' conduct or Philips' trade secrets claims damages, and so default was the only appropriate sanction. ROA.5921. In its opinion, the District Court relied on *BalanceCXI, Inc.*, where default judgment was entered due to spoliation. *BalanceCXI, Inc. v. Int'l Consulting*, No. 1:19-CV-0767-RP, 2020 WL 6886258, at *1-3 (W.D. Tex. Nov. 24, 2020). In *BalanceCXI, Inc.*, the defendant spoliated by using a registry cleanup tool to delete contents from a hard drive after misappropriating source code from the drive. *Id* at *8.

The opinion in *BalanceCXI, Inc.* is readily distinguishable from the instant case. There was no forensic evidence of log deletion presented to the District Court by Philips. Comparatively, the district court in *BalanceCXI, Inc.* was presented with two detailed forensic reports that

57

established extensive deletion had occurred. *Id.* at *12. The *BalanceCXI, Inc.* court found that "the destruction of evidence…made it nearly impossible for BalanceCXI to gather the evidence it need[ed] to prove its case, and any lesser sanction would reward the [d]efendants' actions." *Id.* at *13. Appellants have challenged the sufficiency of Philips' proof to demonstrate the ESI deletion. Here, Appellants also contend Philips was able to present the evidence it contends would prove its case. Philips, by its own testimony vis-à-vis Ms. Dickson, was capable of presenting the District Court with evidence of the extent of Appellants' Service Tool use based upon a review of Appellants' services invoices produced during discovery. ROA.8869:16-8871:4.

The ability for Philips to present testimony on the extent of Appellants' use of its Service Tools that were allegedly protected trade secrets is proof positive that the entry of default judgment on the trade secrets claims as opposed to a lesser sanction was clear error. In *Rimkus*, the district court for Southern District of Texas stated:

> When a party is prejudiced, but not irreparably, from the loss of evidence that was destroyed with a high degree of culpability, a harsh but less extreme sanction than dismissal or default is to permit the fact finder to presume that the destroyed evidence was prejudicial. Such a sanction has been imposed for the intentional destruction of electronic evidence.

58

> Although adverse inference instructions can take varying forms that range in harshness, and although all such instructions are less harsh than so-called terminating sanctions, they are properly viewed as among the most severe sanctions a court can administer.

*Rimkus Consulting Group, Inc. v. Camarata*, 688 F.Supp.2d 598, 618-19 (S.D. Tex. 2010). In light of this standard, Philips could have put on its case-in-chief with an appropriate adverse inference instruction, such as directing the jury to take Philips' testimony of Appellants' use of protected Service Tools as true, and precluding Appellants from being able to challenge the testimony.

In its Memorandum Opinion and Order, the District Court stated that no lesser sanction would "achieve the necessary deterrent effect." ROA.5920. However, this opinion was predicated on the District Court's finding that the extent of the spoliation left Philips unable to "prove both the liability and the damages for its misappropriation of trade secrets claims." ROA.5920. This factual finding is clearly erroneous. While, ostensibly, Philips deriving Appellants' Service Tool usage from the invoices could be subject to challenge by Appellants due to the evidence being imperfect, an adverse evidentiary instruction is an alternative severe sanction provided by Rule 37(e)(2) for exactly this purpose, and

within the ambit of what the *Rimkus* court expressed. *Id.*; Fed. R. Civ. P. 37(e)(2).

> ### D. The Ability for Philips to Present Evidence of Appellants' Service Tool Usage Demonstrates that a Lesser Sanction Would Have Redressed Philips' Harm.

In *Rimkus*, where the defendants had deleted e-mails after they had a duty to preserve them, the district court concluded that Rimkus had not been irreparably prejudiced. *Rimkus*, 688 F.Supp.3d at 653. The *Rimkus* court awarded sanctions to compensate Rimkus for the attorneys' fees and costs incurred as a result of the spoliation, as well as permitted the jury to hear evidence regarding deleted e-mails and permitted the jury to infer that the deleted e-mails would have been adverse to the defendants in that case. *Id.*

Similarly, the Second Circuit found dismissal was not appropriate in *West v. Goodyear Tire & Rubber Co.* where an exemplar wheel central to Goodyear's defense was deflated before Goodyear was allowed to inspect it, and a tire mounting machine and air compressor were sold by West and were damaged before being provided to Goodyear for inspection. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 780 (2d Cir. 1999). In *West*, an evidentiary instruction for a jury to assume the

exemplar tire was overinflated and that a tire mounting machine and air compressor had malfunctioned could be appropriate lesser sanctions, as well as to preclude testimony from the spoliating party, West, on these issues. *Id.* Both the facts in *Rimkus* and *West* bear similarities to the instant case, where spoliation had been determined to have occurred by the district court, but there were options available that allowed each to stop short of granting dismissal or default.

Comparatively, in *Calsep A/S*, there was substantial forensic evidence of deletion, and the extent of the deletion in that case left Calsep A/S unable to present competent expert testimony to prove Dabral's liability and Calsep A/S's damages. *Calsep A/S*, 84 F.4th at 314-15. With Ms. Dickson's testimony that Philips could put on evidence of Appellants' Service Tool use, contrary to Philips' contention that it needed the log files to determine what Service Tools were used, *Calsep A/S* and the instant case are inapposite. ROA.8869:16-8871:4; ROA.4622. The critical fact that differentiates the sanction outcomes in *Rimkus*, *West*, and *Calsep A/S* is whether the non-spoliating party was able to still present its case-in-chief in some form, even if adverse evidentiary instructions

61

were required to accomplish this. In *Rimkus* and *West*, as here, this was possible. *Rimkus*, 688 F.Supp.2d at 653; *West*, 167 F.3d at 780.

Based on Ms. Dickson's testimony that Philips could present evidence of Appellants' Service Tool usage by using Appellants' service invoices, the District Court's determination otherwise was reached in clear error and was dispositive to finding lesser sanctions could be effective. ROA.8869:16-8871:4; ROA.5920. Comparable cases show that a less severe sanction than default was warranted under the record facts, was available to the District Court, and would have prevented prejudice. *See Rimkus*, 688 F.Supp.2d at 653; *West*, 167 F.3d at 780. The sanction should also only restore the prejudiced party to the position they would have been in without the spoliation. *West*, 167 F.3d at 779. Such restoration, here, could be reached with an evidentiary instruction rather than default, and makes clear that a more severe sanction was not warranted, but for the District Court's error in determining this fact. Further, the District Court could also enter other sanctions without requiring default, such as payment for attorneys' fees associated with the motion, to address prejudice unrelated to the proving of liability and damages. The District Court abused its discretion and committed clear

62

error when it determined that liability and damages could not be demonstrated by Philips through any means, which was contrary to the record. The Sanctions Order should be vacated and remanded for reconsideration consistent with the application of lesser sanctions.

## V.    The District Court's $6.05 Million Damages Award Was Improperly Determined and Excessive.

The $6.05 Million damages award granted to Philips was improperly determined and is excessive. Legal conclusions underlying an award of damages are reviewed *de novo* and findings of fact regarding damages for clear error. *Powell v. Penhollow*, 260 F.App'x 683, 689 (5th Cir. 2007) (citing *Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 552 (5th Cir.2005)).

### A.    The District Court Improperly Relied on Philips' Unreasonable and Improper Royalties Model.

The District Court erred in awarding damages based on Philips' $12.1 million royalties model because such royalties are unreasonable. Philips' model improperly applied the entire market value rule by combining in its calculation all revenues from all Appellants' activities related to all Philips' devices instead of those related to the alleged misappropriated trade secrets. Further, Philips failed to apportion its damages to allow calculation for fewer than 511 misappropriated trade

63

secrets. Therefore, the District Court abused its discretion in awarding Philips $6.05 million in damages.

### i. *Philips' Royalties Model Improperly Applied the Entire Market Value Rule.*

The District Court erred in awarding damages based on a royalties model that improperly applied the entire market value rule. Royalties in trade secret cases are reviewed using the same standards as patent cases. A patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *see Thomas as Tr. of Performance Prods., Inc. v. Hughes*, No. 5:16-CV-951-DAE, 2019 WL 1560939, at *9 (W.D. Tex. Feb. 21, 2019) (quoting *University Computing Co. v. Lykes-Youngstown, Corp.*, 504 F.2d 518, 535 (5th Cir. 1974)) ("Courts assess damages in trade secret appropriation cases 'by reference to the analogous line of cases involving patent infringement.'").

Here, the District Court awarded Philips "half of its reasonable royalties damages model". ROA.5927; ROA.4718-19. Philips' royalty model calculation considered Appellants' total revenue of activities

**64**

relating to Philips' devices, including total machine sales, total service sales, and total part sales. ROA.9171:8-14.

When calculating reasonable royalties, "the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (citing *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d, 1326 (Fed. Cir. 2014)). Courts allow calculation of reasonable royalties based on the entire market value of a product or service when "the patented and non-patented components constitute a 'functional unit' and 'that the patented features were the basis for customer demand for the [entire product] as a whole ….'" *Parallel Networks LLC v. Autoflex Leasing, Inc.*, No. 5:07-CV-125-DF, 2008 WL 8781701, at *2 (E.D. Tex. Aug. 19, 2008) (quoting *Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH.*, 408 F.3d 1374, 1379-80 (Fed. Cir. 2005)).

In *Parallel*, the plaintiff claimed royalties on all defendant web revenues, arguing plaintiff's patented technology enabled defendants' online sales. *Id.* at *1. Plaintiff asserted that the technology improved site performance and influenced customer purchases, tying the patents

**65**

to all web revenues. *Id* at \*2. The court held that the sales and patented technology formed a "functional unit" because the technology made the web sales possible, and a jury could find it drove consumer demand. *Id*. at \*3. Thus, the court applied the entire market value rule and allowed royalties based on all defendants' web sales. *Id*.

Differently from *Parallel*, Appellants' supposed use of Philips' trade secrets forms no functional unit with the entirety of Appellants' business activities on Philips devices because service of Philips MRI machines comprises only a small portion of Appellants' revenue. Here, it is undisputed that only about $2.3 million of Appellants' $16.1 million total revenue came from servicing Philips MRI machines. ROA.9179:1-9. In fact, the District Court found that "less than 20% of [Appelants'] collective revenue came from servicing MRI machines." ROA.5926-27. The District Court also found that Appellants primarily used tools that are not trade secrets. ROA.5926. Therefore, the Service Tools alleged to be trade secrets have no effect on Appellants' behavior, as Appellants primarily service MRI machines without using Philips' purported trade secrets. Accordingly, the entire market value rule is not applicable in this case, and Philips' royalties model considering all Appellants' revenue

66

relating to Philips' devices is unreasonable and improper. The District Court erred in awarding damages based on Philips' unreasonable royalties model.

ii.   *Philips' Royalties Model Lacks Proper Value Apportionment.*

The District Court erred in awarding Philips half its royalty model because Philips offered no apportionment or method to calculate damages for fewer than 511 trade secrets. Courts in patent cases have concluded that apportionment is required when the accused technology does not make up the entirety of the accused product. *Trinseo, S.A. v. Harper*, No. 4:20-CV-0478, 2023 WL 8358889, at *5 (S.D. Tex. Nov. 30, 2023). "The damages 'must reflect the value attributable to the infringing features of the [defendant's] product, and no more.'" *Id.* (quoting *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018)). Philips' expert testified that Philips is entitled to reasonable royalties of $12.1 million, asserting Appellants accessed 511 alleged trade secrets through the unauthorized IST certificate. ROA.9188:16-19. Although Philips concedes evidence of Appellants' use of only one trade-secret Service Tool, it offered no method to apportion damages for fewer than all 511 trade secrets. ROA.9227:2-4.

The District Court found it unlikely Appellants used all 511 alleged trade secrets on Philips MRI machines and reduced damages from $12.1 million to $6.05 million. ROA.5925-26. The District Court's calculation is based on speculation and guesswork because Philips provided no evidence of the value of fewer than 511 misappropriated trade secrets or any basis for the fact finder to apportion damages. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F.Supp.2d 1064, 1077 (N.D. Cal. 2005). In fact, the District Court's finding that less than 511 trade secrets would have been misappropriated is itself sufficient to render Philips' expert's testimony useless to determine damages. *Id.* at 1064 ("After the jury concluded that MPS did not misappropriate all of O2 Micro's trade secrets, Mr. Meyer's expert testimony regarding damages for misappropriation of all trade secret was useless to the jury."); *Trinseo, S.A.*, 2023 WL 8358889, at *5 (finding that plaintiff's expert's reasonable royalty testimony would be completely undermined if plaintiff failed to prove that the value of the alleged infringing product was attributable to all non-infringing features where the expert failed to apportion damages). Any *pro rata* apportionment—dividing $12.1 million by 511— would have been improper because the value of each trade secret is most

likely not equal. Even if evidence indicated that the trade secrets were equally valuable, the District Court all 511 trade secrets were not before the Court for evaluation. *LivePerson, Inc. v. [24]7.AI, Inc.*, No. 17-CV-01268-JST, 2018 WL 6257460, at *2 (N.D. Cal. Nov. 30, 2018).

Accordingly, the District Court erred in awarding damages based on Philips' royalty model because Philips failed to provide any means for calculation of damages for less than 511 trade secrets allegedly misappropriated.

## B.    The District Court Ignored Evidence of Appellants' Use of Relevant Trade Secrets.

"Even when entering a default judgment, a court may deny damages if it finds 'no evidence to support an award of damages.'" *ReSea Project APS v. Restoring Integrity to the Oceans, Inc.*, No. SA-21-CV-1132-JKP, 2024 WL 4279524, at *7 (W.D. Tex. Sep. 24, 2024) (quoting *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 (5th Cir. 1992). "Plaintiffs bear the burden to bring forth competent evidence in support of the damages that they seek." *Dontos v. Vendomation NZ Ltd.*, No. 3:11-CV-553-K, 2015 WL 5311094, at *3 (N.D. Tex. Aug. 24, 2015), report and recommendation adopted, No. 3:11-CV-553-K, 2015 WL 5319817 (N.D. Tex. Sep. 10, 2015) (citing *Halff Assocs., Inc. v. Warner Pac. Props.*

**69**

*L.L.C.*, No. 3-08-cv-574-B, 2008 WL 3874673, at \*2 (N.D. Tex. Aug. 13, 2008)). Even if the District Court did not err in basing its damages determination on Philips' deficient royalties model, its measurement failed to tie the damages to trade secrets at issue by ignoring relevant evidence of Appellants' Service Tools use.

Regardless of a court's broad discretion to calculate actual damages, an award of damages after a default judgment sanction cannot be speculative and must be tied to the trade secret at issue. *Calsep A/S v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2022 WL 2813069, at \*5 (S.D. Tex. June 10, 2022), report and recommendation adopted, No. 4:19-CV-01118, 2022 WL 2806538 (S.D. Tex. July 18, 2022), aff'd sub nom. *Calsep A/S v. Dabral*, 84 F.4th 304 (5th Cir. 2023) (citing *Union Carbide Corp. v. Graver Tank and Manufacturing Co.*, 282 F.2d 653, 674-75 (7th Cir. 1960), cert. denied, 365 U.S. 812 (1961); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974)).

Appellants argued, and the District Court assumed, *in arguendo*, that Philips could have found other relevant log files to help Philips determine what Service Tools Appellants used if it had managed to locate

the hard drives on the MRI machines. ROA.5912; ROA.5914. Nevertheless, the District Court found that Philips "could not determine everything that happened" based on Philips' expert witness's testimony that "[i]f any of his puzzle pieces were missing, he would not be able to see the entire picture." ROA.5914. However, the District Court ignored that "the entire picture" showing the exact instances of use of Philips' trade secrets is not so indispensable that reasonable damages are impossible to calculate.

Even without MRI serial numbers or Service Tool identification, the invoices Appellants produced provide relevant information to substantiate damages and tie them to the trade secrets allegedly misappropriated. For example, Appellants' invoices show the times Appellants accessed a Philips MRI machine during the relevant period and the work performed on a specific site. This information allows Philips determine the Service Tools necessary to perform the services on the invoices, especially if Philips had obtained the existing logs from its MRI machines at Appellants' customers' locations. ROA.16211; ROA.9068:9-15; ROA.9235:17-9241:6. However, the District Court ignored relevant

evidence for measurement of damages and arbitrarily awarded Philips $6.05 million in damages.

In *Calsep*, the court also awarded actual damages as an evidentiary sanction in addition to a default judgment. The *Calsep* defendants had misappropriated plaintiffs' source code that should have provided them with a competitive advantage to duplicate plaintiffs' software, but the program was never fully developed and defendants earned no profits from the misappropriation. *Calsep A/S,* 2022 WL 2813069, at *5-6. Plaintiffs sought damages equal to 16 years of development costs without tying it to defendants' misappropriation or the benefit they obtained. *Id.* The *Calsep* court considered plaintiffs' development cost as one factor, and adjusted the measure of damages according to evidence of the commercial setting of the injury, the likely future consequences of the misappropriation, and the nature and extent of the use defendants put the trade secret to after misappropriation. The court ultimately awarded plaintiffs development costs for the most recent three years as sufficient compensation. *Id.* (citing *Univ. Computing Co.,* 504 F.2d at 539).

Philips also sought damages without tying its royalties model to the trade secrets Philips alleges Appellants actually misappropriated. Here,

72

Philips based its damages calculation on Appellants' access to all 511 alleged trade secrets Appellants supposedly had access to by using the unauthorized IST certificate. However, while in *Calsep* the court reduced 16 years of claimed development costs to three based on evidence, here the District Court did not reduce Philips' proposed $12.1 million damages model in light of the evidence regarding the Service Tools Appellants allegedly misappropriated. In fact, the District Court based its award on the absence of evidence showing with certainty how many and what trade secrets Appellants used, rather than reasonably adjusting the measure of damages considering the "peculiar facts and circumstances" established by available evidence in this case. *Univ. Computing Co.*, 504 F.2d at 538 (quoting *Enterprise Manufacturing Co. v. Shakespeare Co.*, 141 F.2d 916, 920 (6th Cir. 1944)). Accordingly, the District Court erred in awarding Philips damages without taking into consideration relevant evidence other than logs indicating the exact trade secrets allegedly used by Appellants. Further, if the existing evidence is insufficient for a reasonable measurement of damages, the District Court should have conducted further inquiry before determining a damages amount. *See KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir.

73

2003) (concluding that district court abused its discretion in failing to conduct further inquiry on damages in light of discrepancies and errors and the nature of claims).

### C.    The District Court Erred in Including Sanctions Related to Pending Claims in the Trade Secret Misappropriation Damages Award.

The $6.05 million damages award for trade secret misappropriation as a sanction against Appellants also accounts for and purports to remedy "additional prejudice that Philips incurred from being unable to prove the damages for [its CFAA, DMCA, unfair competition, and fraud] claims," although the District Court concluded that such claims will proceed based on the evidence that Philips possesses. ROA.5928. This award violates due process to the extent it denies Appellants an opportunity to contest liability and damages for unadjudicated claims. *Timms v. LZM, L.L.C.*, 657 F.App'x 228, 230 (5th Cir. 2016) ("[W]e require that the sanction 'must comply with the mandates of due process.'") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

Bundling sanctions for other claims into trade secret damages is improper, as such awards must be tied to the trade secrets at issue.

74

*Calsep A/S*, 2022 WL 2813069, at \*5. By incorporating sanctions related to other claims into an award of trade secrets damages, the District Court created a "catch-all" sanction in clear abuse of its discretion. *See Id.* Further, Appellants cannot discern how the additional sanctions incorporated into the $6.05 million award were allocated. For example, Appellants are unable to determine what percentage of this amount corresponds to which of the remaining claims. *See Ryan Companies US, Inc. v. Solarjuice Am. Inc.*, No. 3:23-CV-00331, 2025 WL 429015, at \*4 (S.D. Tex. Feb. 7, 2025). Accordingly, the District Court abused its discretion in including sanctions for Philips' pending claims in the trade secret damages award.

## VI. Dismissal of Original Defendants' Counterclaims is Unsupported by the Record.

### A. The Standard of Review is Clearly Erroneous.

The District Court abused its discretion in denying Original Defendants' motion to reconsider the constructive dismissal of their counterclaims. *See, generally, McKinney ex rel. N.L.R.B. v. Creative Vision Res., L.L.C.*, 783 F.3d 293, 298 (5th Cir. 2015) (analyzing application of abuse of discretion standard); *see Davis v. White*, 794 F.3d 1008, 1016 (8th Cir. 2015) (reviewing for abuse of discretion whether

counterclaims not repleaded should be deemed abandoned); ROA.2928; ROA.2930.

## B.     A Counterclaim is Not Moot if Intent to Pursue is Manifested.

Absent reassertion of counterclaims by a defendant after amendment to the complaint, the counterclaims are not moot if the defendant had otherwise manifested its interest in pursuing them. *Schutt a/n/f for A.S. v. Garland Indep. Sch. Dist.*, No. 3:17-CV-1708-B, 2019 WL 3006768, at \*3 (N.D. Tex. July 9, 2019) (citing *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 706 (D. Md. 2011). Here, Original Defendants manifested their intent to continue pursuing their counterclaims by engaging in motion practice and discovery activity related to the counterclaims, and by disclosing an expert. Moreover, Phillips had sufficient notice that Original Defendants were pursuing their counterclaims.

## C.     Motion Activity Evidences that Original Defendants Intended to Pursue their Counterclaims.

A defendant manifests intent to pursue its counterclaims by defending against motions to dismiss. *Id.* at \*3. Here, on January 26, 2023, Phillips filed a motion to dismiss Original Defendants' counterclaims filed on December 6, 2022. ROA.525. On February 16,

**76**

2023, Original Defendants amended their counterclaims. ROA.1060. After the court denied Phillip's Motion to Dismiss Original Defendants' Original Answer and Counterclaims as moot, Phillips filed its Motion to Dismiss Original Defendants' First Amended Counterclaims. ROA.1192; ROA.1197. On April 6, 2023, Original Defendants timely filed their response to Phillips' latest motion to dismiss their counterclaims, and Phillips replied on April 17, 2023. ROA.1311; ROA.1343. Accordingly, Original Defendants fully defended their counterclaims against Phillips' Motion to Dismiss.

On September 14, 2023, before the District Court ruled on Phillips' Motion to Dismiss Original Defendants' counterclaims, Phillips filed its Second Amended Complaint, adding Joined Defendants with no other material changes to its First Amended Complaint. ROA.1906 compare to ROA.260. Notably, Phillips acknowledged in the Second Amended Complaint that Appellants are interrelated parties. ROA.1914. Mr. Shannon is the director for all corporate Appellants. ROA.2718. Also, Original Defendants' counsel jointly represented the Joined Defendants. ROA.2717-18. As such, the Original Counterclaims filed by Joined Defendants were nearly identical to Original Defendants' Original

77

Counterclaims dated October 12, 2023.[3] ROA.2717; ROA 2071 compare to ROA.525. Phillips moved to dismiss Joined Defendants' Original Counterclaims and Joined Defendants amended their counterclaims pursuant to Fed. R. Civ. P. 15(a)(1). ROA.2131; ROA.2134; ROA.2203. Phillips then filed a Motion to Dismiss Joined Defendants' First Amended Counterclaims. ROA.2257; ROA.2260. On December 26, 2023, Joined Defendants responded to Phillips' latest motion to dismiss, and Phillips replied. ROA.2327; ROA.2363.

On June 26, 2024, the District Court constructively dismissed Original Defendants' First Amended Counterclaims, more than a year after February 16, 2023, when such counterclaims were filed. ROA.2654; ROA.1060. In the interim, specifically after Phillips' Second Amended Complaint, Original Defendants were under no obligation to reassert their counterclaims. *See id.* at *3. Moreover, Original Defendants had no reason to engage in further motion practice after the Second Amended Complaint concerning their First Amended Counterclaims, as Phillips'

---

[3] To the extent Image II and Axiom's First Amended Counterclaims were dismissed by the District Court because they were time-barred, the outcome of Phillips' Motion to Dismiss Mr. Shannon and Image I's First Amended Counterclaims would likely be different, as Appellants' counterclaims were filed on different dates.

Motion to Dismiss such counterclaims had been fully briefed. This motion practice evidences Original Defendants' intent to continue pursuing their First Amended Counterclaims, including after the Second Amended Complaint. Additionally, the motion activity, and the assertion of nearly identical claims by Joined Defendants shows that Phillips had sufficient notice that Original Defendants intended to pursue their counterclaims. *See Davis*, 794 F.3d at 1016.

### D. Discovery Activity Evidences that Original Defendants Intended to Pursue their Counterclaims.

A defendant manifests its interest in pursuing its counterclaims by undertaking discovery on such counterclaims. *Schutt*, 2019 WL, 3006768, at *3. On March 25, 2024, and after the Second Amended Complaint was filed, Original Defendants engaged in discovery in connection with their counterclaims. ROA.2951-56. Specifically, Appellants' Requests for Production Nos. 54 to 120 included various requests for documents supportive of Original Defendants' counterclaims. ROA.2951-56. On May 22, 2024, counsel for Appellants sent an e-mail to Philips' counsel containing a proposed list of topics for Phillips' corporate representative deposition including various topics specifically related to Original Defendants' First Amended Counterclaims. ROA.2974-86. Additionally,

on June 24, 2024, Original Defendants served their Expert Disclosures listing Frederick R. Warren-Boulton as an affirmative expert witness for all Appellants, and filed an Amended Answer pursuant to the District Court's Order, which referred to Original Defendants as both "Defendants" and "Counter Plaintiffs." ROA.3002; ROA.3006-46; ROA.2656; ROA.2698.

The fact the discovery-related materials that support Original Defendants' intent to pursue their counterclaims were filed and served by Appellants as a group is irrelevant. Appellants' counterclaims, though separately filed, were nearly identical, and the attorneys and affirmative expert witness for all Appellants were the same. ROA.2717. Requiring Appellants to prepare discovery materials and filings separately would add unnecessary costs to this litigation and cause Appellants an undue burden. *See* Fed. R. Civ. P. 1 ("[The civil procedure rules] 'should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'"). The District Court abused its discretion in finding that Original Defendants did not individually show their intent to maintain their counterclaims as Original Defendants' discovery activity

also involved Joined Defendants. Accordingly, the Order dismissing Mr. Shannon and Image I's counterclaims must be reversed.

## CONCLUSION

Appellants request this Court vacate and remand the Sanctions Order for reconsideration under the appropriate clear and convincing evidence standard, or, alternatively to determine that the elements of Rule 37(e) were not met to satisfy the requirements to award sanctions, and reverse the Sanctions Order and remand for further proceedings.

In the alternative, Appellants request that this court vacate and remand the Sanctions Order on the basis that the District Court erred in determining Appellee was substantially prejudiced by the spoliated ESI.

In the alternative, Appellants request this Court vacate the Sanctions Order and remand on the basis that the District Court erred in determining lesser sanctions were insufficient to redress the spoliation harm.

In the alternative, Appellants request that this Court vacate and remand for further reconsideration of the damages award of $6.05 million on the basis that the District Court erred by improperly calculating the

figure, failed to consider available evidence of Appellee's damages, and improperly awarded uncertain damages for still-live claims.

Lastly, Appellants Image I and Mr. Shannon request that this Court reverse the Order dismissing Image I and Mr. Shannon's amended counterclaims on the basis that the District Court erred in deeming them abandoned or mooted and remand for further proceedings on those counterclaims.

Respectfully submitted on September 15, 2025.

CHAMPION LLP

*/s/ Austin Champion*
Austin Champion
Texas Bar No. 24065030
austin.champion@championllp.com

2200 Ross Avenue
Suite 4500W
Dallas, Texas 75201
214-225-8880 | Direct
214-225-8881 | Fax

**Counsel for Appellants**

No. 25-10549

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

PHILIPS NORTH AMERICA, L.L.C.,
*Plaintiff - Appellee*,

v.

IMAGE TECHNOLOGY CONSULTING, L.L.C.; MARSHALL R.
SHANNON; IMAGE TECHNOLOGY CONSULTING II, L.L.C.; AXIOM
IMAGING SOLUTIONS, INCORPORATED,
*Defendants - Appellants*.

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

---

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of September, 2025, a copy of the foregoing was served upon counsel for all parties to this proceeding as identified below through the court's electronic filing system as follows:

For Plaintiff/Appellee:

**REED SMITH LLP**
Christopher R. Brennan
State Bar No. 313534
225 Fifth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: (412) 288-3399
Facsimile: (412) 288-3063
cbrennan@reedsmith.com

Clark A. Donat
State Bar No. 24074143
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
cdonat@reedsmith.com

James T. Hultquist
10 South Wacker Drive
Chicago, Illinois 60606-7507
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
jhultquist@reedsmith.com

Gerard M. Donovan
1301 K. St., N.W., Ste. 1000 – East Tower
Washington, DC 20005
Telephone: (202) 414-9224
Facsimile: (202) 414-9299
gdonovan@reedsmith.com

Carla M. Wirtschafter
1901 Avenue of the Stars, Suite 700
Los Angeles, California 90067
Telephone: (310) 734-5200
Facsimile: (310) 734-5299
cwirtschafter@reedsmith.com

Respectfully submitted on September 15, 2025.

CHAMPION LLP

*/s/ Austin Champion*
Austin Champion
Texas Bar No. 24065030
austin.champion@championllp.com

2200 Ross Avenue
Suite 4500W
Dallas, Texas 75201
214-225-8880 | Direct
214-225-8881 | Fax

**Counsel for Appellants**

No. 25-10549

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

PHILIPS NORTH AMERICA, L.L.C.,
*Plaintiff - Appellee*,

v.

IMAGE TECHNOLOGY CONSULTING, L.L.C.; MARSHALL R.
SHANNON; IMAGE TECHNOLOGY CONSULTING II, L.L.C.; AXIOM
IMAGING SOLUTIONS, INCORPORATED,
*Defendants - Appellants*.

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

---

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App.

P. 32(a)(7)(B) because it contains 12,994 words and has been prepared in

a proportionally spaced typeface using Microsoft Office Word for Mac in

14-point Century font.

Respectfully submitted on September 15, 2025.

**CHAMPION LLP**

*/s/ Austin Champion*
Austin Champion
Texas Bar No. 24065030
austin.champion@championllp.com

2200 Ross Avenue
Suite 4500W
Dallas, Texas 75201
214-225-8880 | Direct
214-225-8881 | Fax

**Counsel for Appellants**